**In re Waldo Roberto RAMIREZ, Debtor.**

**AT & T UNIVERSAL CARD SERVICES CORP., Plaintiff,**

**v.**

**Waldo Roberto RAMIREZ, Defendants.**

**Bankruptcy No. 94–14411–BKC–AJC.**
**Adv. No. 95–0127–BKC–AJC–A.**

United States Bankruptcy Court,
S.D. Florida.

July 6, 1995.

James Schwitalla, Miami, FL, for plaintiff.

Waldo Roberto Ramirez, Coral Gables, pro se.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

A. JAY CRISTOL, Chief Judge.

This matter came before the Court on June 22, 1995 upon the Complaint of AT & T UNIVERSAL CARD SERVICES CORP., (the "Plaintiff"), seeking to except the outstanding balance of debtor WALDO ROBERTO RAMIREZ'S AT & T credit card account from discharge under 11 U.S.C. § 523(a)(2)(A). The Court having heard the testimony, examined the evidence presented, observed the candor and demeanor of the witnesses, considered the arguments of counsel, and being otherwise fully advised in the premises, does hereby make the following Findings of Fact and Conclusions of Law:

### Findings of Fact

1. Defendant Waldo Ramirez (hereinafter "defendant" or "debtor-defendant") was employed as an electronics technician by Pan American Airlines from the mid–1980s until December, 1991. Prior to leaving the company, his gross salary was $33,000. While working for Pan Am, Ramirez was able to purchase two condominiums, a primary residence and an investment property. He also owned a 1987 model year vehicle worth approximately $16,000, free of any encumbrance.

2. Pan Am ceased operations in December 1991, laying off approximately 30,000 employees, including debtor. Defendant Ramirez subsequently found employment in January 1992 with American Eagle at $8.00 per hour and after several months with American Airlines at $14.00 per hour. The new position with American required Ramirez to move to Texas at his own expense. In August 1992 his employment with American was terminated just prior to the conclusion of his probationary employment period. Ramirez returned to his home in Dade County, again at his own expense. Since that time Defendant has been unemployed. He collected unemployment compensation in the amount of approximately $1,000 per month from September 1992 through August 1993.

3. From September 1992 until the present, Ramirez continued to look for work, frequently incurring travel expenses for job interviews. He hired an employment counselor and enrolled in retraining classes.

4. During his period of unemployment, defendant sold his investment property, his primary residence and his vehicle at a loss and was required to contribute cash at the closings to pay off the liens on the assets. He could no longer maintain the car and the properties. Hard times were at hand. Defendant testified that he also borrowed approximately $15,000 from family members.

5. Plaintiff's Exhibit 11 shows AT & T VISA Gold credit card statements in Mr. Ramirez's name for three separate accounts. It is not clear when the accounts were opened and closed, or whether they are all actually the same account. The statements show that the first AT & T VISA was opened prior to debtor becoming unemployed. The earliest statement submitted by plaintiff, July 1991, indicates an annual membership fee was billed to the card June 28, 1991. Mr. Ramirez's credit line at that time was $5,000. The previous balance was zero, and the new outstanding balance was $371.98. The evidence does not indicate if this was the first statement on the account, or if the account was opened in a prior year. The statements show that Defendant's payment history is as follows:

| Account Number | Credit Line | Payment Date | Pymt. Amt. | Balance |
|---|---|---|---|---|
| 4784–8000–0005–1356 | $5,000.00 | 08/09/91 | $ 100.00 | $ 371.98 |
| | | 09/11/91 | $ 150.00 | $4,818.91 |
| | | 10/04/91 | $ 800.00 | $5,495.80 |
| | | 10/15/91 | $ 300.00 | $4,974.28 |
| | | 11/04/91 | $ 300.00 | $4,974.28 |
| 4784–8090–0000–2103 | $5,000.00 | 01/09/92 | $ 300.00 | $4,829.02 |
| | | 03/25/95 | $ 280.52 | $4,856.89 |
| | $ 0.00 | 06/12/92 | $ 0.00 | $1,058.53 |
| | | 06/16/95 | $1,058.53 | $ 0.00 |
| 4784–8090–0000–9645 | $9,000.00 | 08/03/92 | $ 263.00 | $8,688.08 |
| | | 8/28/92 | $2,688.08 | $7,503.30 |
| | | 9/21/92 | $ 837.98 | $7,187.06 |
| | | 10/28/92 | $ 169.16 | $8,601.25 |
| | | 12/07/92 | $ 200.00 | $8,759.93 |
| | | 03/17/93 | $ 270.70 | $9,078.16 |
| | | 04/19/93 | $3,000.00 | $6,781.82 |
| | | 06/17/93 | $ 200.00 | $9,106.21 |
| | | 07/27/93 | $ 410.74 | $9,061.29 |
| | $9,500.00 | 09/10/93 | $ 278.62 | $10,001.13 |
| | | 09/14/93 | $ 600.00 | $9,791.19 |
| | $ 0.00 | 12/12/93 | $ 0.00 | $10,730.79 |

It appears the account was opened in June 1991 with an initial credit line of $5,000. In August 1992, plaintiff increased defendant's credit line to $9,000. In August, 1993, plaintiff increased defendant's credit line to $9500. The statements indicate that defendant often was late with his payments. Nevertheless, defendant consistently made payments on the account until September 1993, some of them quite substantial. It appears that defendant's account closed between November and December 1993.

6. On October 4, 1994, Defendant Waldo R. Ramirez filed a voluntary petition under Chapter 7 of Title 11 of the United States Code.

7. On January 30, 1995, Plaintiff initiated this adversary proceeding to except from discharge the $11,700.00 debt on an AT & T credit card issued by plaintiff to defendant.

### Conclusions of Law

1. 11 U.S.C. § 523(a)(2)(A) provides that: (a) a discharge under § 727 ... of this title does not discharge an individual debtor from any debt— ...

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."

2. In order to obtain an exception to discharge, AT & T UNIVERSAL CARD SERVICES must prove by a preponderance of the evidence that the Defendant used the AT & T VISA account to obtain money, property, services, or an extension, renewal, or refinancing of credit by false pretenses, a false representation, or actual fraud. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

3. The purchase of goods with a credit card constitutes an implied representation by the purchaser that he has both the means and the intent to repay for the goods purchased. *In re: Schmidt,* 36 B.R. 459 (Bkrtcy.E.D.Mo.1983); *In re: Kramer,* 38 B.R. 80 (Bkrtcy.W.D.La.1984); *In re: Ciavarelli,* 16 B.R. 369 (Bkrtcy.E.D.Pa.1982).

4. Thus, if the cardholder uses the card to purchase goods or to obtain cash advances while knowing that the charges cannot be paid, or if evidence indicated that the cardholder should have known that the charges cannot be paid, the creditor has established a claim of nondischargeability. *In re: Carpenter,* 53 B.R. 724 (Bkrtcy.N.D.Ga. 1985); *In re: McKinney,* 18 B.R. 607

(Bkrtcy.M.D.GA.1982); *In re: Black*, 373 F.Supp. 105 (E.D.Wis.1974).

■ 5. The facts in this case are clear that Defendant was employed at the time the AT & T account was opened. Moreover, Defendant continued making payments on the card despite being unemployed during January 1991 and between September 1992 through September 1993. He did not stop making payments until after his unemployment compensation was exhausted in August 1993. Defendant made no new purchases on the card after October 1993.

6. Defendant became unemployed through no fault of his own, but rather as a result of the closing of an airline that was one of America's great institutions. Defendant clearly made his best efforts to find work, and is still continuing those efforts. He has enrolled in retraining classes and consulted a career counselor. The Court is persuaded that Defendant always intended to pull himself out of his unfortunate financial circumstances and repay his debts.

7. At trial, Plaintiff introduced no evidence whatsoever of fraud or misrepresentation. Plaintiff's whole theory of the case was that Mr. Ramirez's living expenses exceeded his income during the period of unemployment. Despite these circumstances, Mr. Ramirez continued to make payments on his AT & T credit card. Plaintiff produced no evidence of false pretenses, false representations, or actual fraud, and has offered not one scintilla of evidence that Mr. Ramirez did not intend to repay the moneys that he borrowed. The only evidence on that subject came from Mr. Ramirez, who testified that he always wished and intended to repay. The monthly credit card statements submitted into evidence are replete with entries of payments, as listed above.

8. Plaintiff alleged that it relied on debtor to abide by terms of the credit agreement. The Court concludes that if such reliance and breach of such agreement constituted grounds for nondischargeability there would be no discharge of any debt in bankruptcy, since whenever a debt is incurred there is a promise to repay it and the breaking of that promise, as a matter of law, would constitute grounds for denial of discharge. This is ludicrous.

9. The Court finds defendant's plight— one that has befallen many former employees of Pan Am—to be a tragic situation. Defendant lost a good-paying job, at which he had worked for many years. Despite his financial circumstances, he made heroic efforts to pay his debts and did his best to mitigate his total debt by selling his investment property, his car, and his home. Defendant has stated that he always hoped to pull out of his situation, that he did his best to find work for a two year period, and that bankruptcy was his last resort. Defendant's plight is precisely the situation Congress had in mind when it drafted the Bankruptcy Code. Based on debtor's factual circumstances and plaintiff's failure to allege any evidence of fraud or misrepresentation, judgment is entered in favor of Defendant.

■ 10. The Court views plaintiff's act of bringing this nondischargeability action against defendant as a persecution of the debtor. Section 523(d) of the Code provides that if a creditor requests a determination of dischargeability of a consumer debt under subsection § 523(a)(2), and such debt is discharged, the court *shall* grant judgment in favor of the debtor for the costs and a reasonable attorney's fee for the proceeding if the court finds that the position of the creditor was not substantially justified. The factual situation underlying this action more than meets the criteria of § 523(d). The position of the creditor was not substantially justified. It was *totally* unjustified. The claim of nondischargeability in the eyes of the Court constitutes nothing more than persecuting an unfortunate honest debtor and blaming that debtor for plaintiff's own casual and inadequate lending practices. The plaintiff's case, as viewed by the Court, is a collection of outrageous garbage. Accordingly, costs are awarded in defendant's favor in the amount of $750 in consideration for his time spent responding to this litigation.

11. Based on the entire record, this Court concludes that the amount of $11,525.12 is determined dischargeable.

12. A separate Final Judgment of even date has been entered in conformity with these Findings of Fact and Conclusions of Law.